Thank you, Your Honor. My name is David Barrett, representing the plaintiffs in this case in which, as the Court knows, the issue is whether the action should proceed as a class action. I would like to reserve five minutes for rebuttal, if I might, since I'm not sure what issues the defendants are going to raise in their presentation. The basic reason that certification was denied here was the district court's finding that factual questions pertaining to the defendant's fraud, or factual and legal questions pertaining to the defendant's fraud, did not predominate over individual questions, which the district court described as issues of reliance. We contend that that decision was wrong as a matter of law. Although the defendants try to make it sound very complicated, the fraud claim, and it's a male fraud claim as the predicate act under RICO, is really very simple. The claim is that the presentation on the face of electronic slot machines and video poker machines, the presentation that every player of those machines sees every time that he or she goes and puts money in one of those machines in the hopes of winning, that that presentation embodies on its face fundamental omissions or misrepresentations that go to the very heart of the gambling transaction. Let me ask you a question. That is taking place. Yes, sir. When you say presentation, you're not talking about written words. You're talking about what it looks like. Well, I'm really talking about both, but let's focus on, in the case of the electronic slot machines, among other things, it is the appearance of the symbols on the reels on the face of the machine. And the complaint alleges, and I don't even think the defendants dispute, that the frequency with which winning symbols appear on those reels. I understand that. I read your briefs very carefully. My question is a very simple one. Does the presentation, as you use that word, include anything in writing as distinguished from symbols, observation, what a person sees? Well, again, in the case of the slot machines, if that's the distinction Your Honor is drawing, then it would include the frequency of the appearance of the symbols. In the case of the video poker machines, it is very much the use of words such as uses 52 card deck, shuffle, draw, other words which on their face can note that the machine is doing something that is the same as a live dealer would do. Do you think you have a stronger argument with regard to the card deck than you do the slot machine? I think we have very strong arguments on both, Your Honor. In the case of the poker machines, I think what you have is an affirmative misrepresentation. You have the defendants saying, in effect, this is like you were sitting here playing one-on-one with a dealer, and if you get a certain hand, you'll win, and if you don't, you'll lose. In the case of the slot machines, I think what you have, under any reasonable understanding of what's going on, is very clearly an omissions case. You are seeing one thing, that is the frequency with which the symbols appear, and what you are not being told is that that frequency, and indeed that appearance, has nothing to do with whether you're going to win or lose on a play of the game. It seems to me on the electronic slots, although you characterize it as primarily omissions, that as you first started your argument, that it's also at least an alleged misrepresentation by virtue of the machine itself, isn't it? In other words, the trade dress or the actual physical, you know, you're saying what you see is not what you get. Isn't that what you're saying? Well, that's correct, Your Honor, and I think at some level, the distinction between an omission and a misrepresentation is truly a semantic distinction, because you can... Do you think it matters legally here? Your Honor, let's say that whether you call it reliance or a combination of but for and proximate cause, if that's required in the Ninth Circuit, do you think that it's necessary for us to reach this issue of whether affiliated ute would be extended to a consumer RICO claim? I think it's clear that affiliated ute ought to be so extended. Nevertheless, I think this case can be decided without deciding that precise question. How so? Let me see if I can get you there. Essentially, it can be decided that way, Your Honor, as a matter of common sense application of the rules of circumstantial evidence that apply in every case and in every court. If there is, as the complaint alleges here, and we do have to take that as true, a material misrepresentation of or a material omission, either one, and this I don't think matters. If there is that, something inaccurate, in other words, a fraud of the kind we're alleging, if that is a material inducement to play, and if the act of playing occurs, then we have proven as a matter of circumstantial evidence, as you say, whatever you want to call it, but for causation, proximate causation, reliance. The misrepresentation was important, was significant, was material in the decision of a reasonable person to engage in that transaction. The district judge comes to the opposite view on the basis of the reliance issue, and it seems to me that's the one that we have to deal with, that you've got to, it seems to me, show the district judge was wrong, either wrong or didn't need, or reliance issue is not involved in the case. And I assume from your briefs you show that you're arguing that he was wrong on the reliance issue. I believe he was wrong on the reliance issue, but in response to Judge McAllen's question, I think it is also not necessary for this court to decide that question. Was that raised in the district court? Was that raised in the district court? Was what, Your Honor? The issue that you just talked of. I believe it was, Your Honor. Was it? Well, it seems to me, you say we don't have to decide it, but we're here on class certification so that our standard of review on abuse of discretion means a great deal of deference to the district court. Now, if he made a legal error, then that, by definition, would be an abuse of discretion. If he didn't make a legal error but he made a decision that we might disagree with but might not be an abuse, you'd be in a different situation, correct? That's correct, Your Honor. Okay, so you're saying that even if he didn't make a legal error, we should reverse him anyway. Is that your position? Well, I believe that he made a legal error. Okay. And I believe it is a legal error to fail to recognize that circumstantial evidence presented in the way that I just described, and that can be done on a class-wide basis, is not sufficient to meet the predominance requirement. I don't think that a judge has discretion to find that there is no predominance based, for example, as the judge did here, on two examples, that maybe people play these machines because the packaging is attractive or maybe they play them because table games are too expensive. It costs a quarter to play a slot machine and $10 to play poker at the table. Those exact kinds of considerations apply in every single case that involves a fraudulent transaction. If you think about a securities purchase, somebody buys Enron because they can't afford the price of Exxon. Somebody buys every stock that has the name dot-com. Right, but I think there's a difference in the securities context because, well, first of all, you're dealing in a highly regulated market, which is truly a market. And here you're basically trying to take the concepts of a fixed securities market and translate them into a consumer fraud case. Well, people don't have to gamble either. I mean, there's a difference in terms of the security market. You may have to, you know, there's a fiduciary duty. People may, as a result of their pensions, have to be involved in it, whereas people don't have to gamble. People don't have to engage in most consumer transactions and, indeed, I would say in most securities transactions. But the point is, if the defendants hold themselves out in that market, and they are, they do have duties which are imposed by fraud statutes to not to make material misrepresentations and not to make material omissions. I have a question about the reliance. Assuming that reliance, just for the purposes, assuming that reliance is a necessary element in a RICO action for mail fraud, what are the best arguments for or against presuming reliance as in actions for security fraud? And then also, since the presumption, if, let's say, if you apply the presumption, since it is rebuttable, wouldn't the plaintiffs ultimately have to allege or prove individualized reliance to carry their burden of proof? Let me answer the second question first, Your Honor, because I think that this Court answered it 30 years ago and very eloquently in Blackie against Barrick. In the securities context, I will acknowledge, but that makes no difference at all because the law is exactly the same in both contexts. The defendant has the right in any situation where there is a presumption to rebut that presumption. And the plaintiff has a burden, particularly when the defendant puts in some evidence, still is going to have the burden of proof on that issue. And what Blackie v. Barrick said, and it's in footnote 22 of the opinion, and it's spelled out at great length, is the fact that there may be defenses to individual reliance does not prevent the case from going forward under the securities law. Well, can you prevail in this case if we don't import the presumption? I think we can. Again, for the reason of... I'm having a hard time seeing that. But I don't think we are not supposed to look at your merits, correct? We are not, and I hope the Court will bear that in mind when it hears the defendant's argument. And I don't think you have to. You look at the allegations of the complaint. The allegations of the complaint say that from the face of the machine, we were defrauded. As this Court said quite recently in the Chaseit decision involving trading cards, if the transaction is a phantom chance, if you don't get the chance that the transaction promises you, in that case they did, and the Court threw out the case. In this case, we allege we didn't get the chance. We didn't get what was represented. We didn't get what was promised, or we didn't get... You know, one of the difficulties I'm having is as you describe the potential class, it would seem that every single consumer fraud would be a class under your test, which is you allege a material misrepresentation. The act of play occurs. Therefore, damage. Therefore, by circumstantial evidence, you have this common predominance. So I want to take you back to a case we asked parties to be prepared to talk about, and that's this Humana-Forsyth case out of the Ninth Circuit. Because we said in there you've got to have but-for and proximate causation, and then went on to say you have to establish a class, you have to show that they relied on the misrepresentations. So it seems to me that in many respects, from a legal standpoint, that the district court followed that line of analysis, and we'd be hard-pressed under this precedent to say he made a mistake of law. I don't think you can say that, Your Honor, and you can say that for the following reason. The injury that was being alleged in the case that you referred to was truly an indirect injury. It was an injury that was the claim was that discounts were not being passed on to the plaintiffs and that that was fraudulent. Here, and what's different, I think, from many, from the consumer fraud cases where class certification is denied, here what you have alleged and what we propose to prove is direct interaction on a uniform basis between the consumer and the defendant. When you go up to play the machine, you see it, you see the fraud, and you act on it. And we know that you're acting on it because it's there and it's material, if we can prove that allegation, and you act on it. You don't have those circumstances in a case like Forsyth. And you don't have those circumstances in many of the cases that the defendants rely on. For example, the cases involving national advertising and where the claim is that national advertising, car advertising, for example, is fraudulent. There, the district court's logic is correct. We don't know if everybody saw the advertising. We don't know if the advertising was material to the purchase decision or not. But that is a very different circumstance. And I submit this case is more like there's a case called Varner v. Healy from Chicago that we cite where the product on its face was called car wax and the allegation was it wasn't wax at all. That's the circumstance we have here. That's the kind of case that we have here. And all of the other facts having to do with individual knowledge or skill, as the defendants call it, don't change the fundamental uniform misrepresentation that occurs at the time of the immediate transaction and that we know occurs at that time. Could I ask one question before you sit down because I know you're trying to save time. Thank you. And that has to do with an issue that lawyers don't like us to raise, one of jurisdiction. I'm sorry? Jurisdiction. Yes. The issue is whether in this case, before we get to the Rule 23-F issue that you raised, whether we have to find that the district court had jurisdiction. Jurisdiction has been raised by your adversary, and there's only one case I know of that's dealt with this in the Seventh Circuit where they held that in the 23-F cases we do need to look at jurisdiction. So my question to you is, in this case, before we get to this wonderful outline that you've given us, don't we have to deal with jurisdiction to make sure we have power to make a decision? Well, I believe you do in a theoretical sense, Your Honor. None of the arguments that they have made on appeal go to subject matter jurisdiction. None of them deprive this court, maybe. Well, they do throw in subject matter jurisdiction. They use the word subject matter jurisdiction, but I don't see where there's a lack of subject matter jurisdiction. They talk about primary jurisdiction. Whether they raise it or not, we have to deal with jurisdiction. That's our role. And you haven't had a chance to respond to this, and I know you want to save some time, but do you agree that we do have to look at the jurisdiction issue? Yes, but I'm not aware of how it's presented. I mean, it's a Federal question case. It arises under RICO. I believe that gives the court subject matter jurisdiction. Okay. Thank you. Good morning. I please the Court. My name is David Frederick. Dennis Kennedy is with me from Lionel Sawyer & Collins presenting the argument on behalf of all of the appellees this morning. I want to begin by focusing the Court's attention on a matter that was raised by you, Judge McKeown, and that is the question of what the issue is before this Court. I respectfully submit that it is not what plaintiff's counsel has stated, i.e., whether this case should proceed as a class action. The issue before this Court is whether the district court abused its discretion in denying class certification in a case where the class members number substantially in excess of 22 million people, where we're dealing with 65 defendants in a variety of categories from manufacturers to casino operators, both on the high seas and cruise ships and land-based, where there are allegations that would require the analysis not only of the knowledge and the motivations of each of the millions of class members, but in the latest version of the fraud that is now being suggested to this Court, and I'm referring specifically to the plaintiff's reply brief and to the comments made at oral argument, in which the allegation now appears to be that on some plays of the machines there is a real chance and on some plays there is a phantom chance. That allegation now requires that, by some means, the district court determine whether or not a concrete financial loss resulted from one type of play or the other. And finally, we have to deal with players who range all the way from William Poulos, who is a... Chance versus phantom chance, because I thought that was part of the original complaint, that sometimes you have a real chance and other times you don't, depending on which incarnation you're playing. Why would that require an individual determination of loss? Let me turn, to set up the answer to that, to the Forsyth case that this Court has made reference to. Forsyth requires two items. One, as the Court has already referenced, reliance on a misrepresentation where there has been a payment of money. But it also requires that the misrepresentation cause, in the words of the Court, a concrete financial loss. Now, the fraud that is now being suggested is that the machines are capable, and I phrase that very carefully because you will not find in either the allegations of the complaint or the patent discussion that they refer to in their reply brief, a single allegation that any defendant has in fact set up a machine this way. There's a pretty good reason for that, and that is the machine would be immediately off, it would never make it to market in the first place. But, the allegation is that the machines can be set up so that on some plays of the machine, there is a real chance of winning, and on some plays of the machines there is only a phantom chance of winning. So now we're faced with the fact, if to recover damages under RICO, you have to prove a concrete loss resulting from the misrepresentations, and this is the fraud that is now being set up, we have to look at the play. Was this a play in which there was a real chance, or was this a play in which there was a phantom chance? Whatever those words mean. That's not going to be uniform across the class, the alleged class. It can't be uniform across the class because every class member must prove a concrete financial loss to them. And that's the problem we get into. So if there's a real chance, then you wouldn't have a loss, any different? Well, if there's a real chance, then we get into the Chason case that the counsel referred to, in which, if there is a real chance, what you have gotten for your bet, in this case, was that chance, and there is no injury under RICO. So we now move to the other side. We talk about whatever this phantom chance is, and I urge the Court to read the discussion at page 61 of the appellant's excerpts of record because by taking the word, quote, unquote, predetermined out of context, they have created this phantom chance scenario. But on their discussion of it, not what is in fact predetermined, which is the probability of results, not the outcome of any particular play, but on their discussion, then we have to go to the specific transaction. And we're talking about billions of transactions. And the Newton Court made it very clear that when you have that scenario, even if you have presumptions, circumstantial evidence, inferences, whatever, the plaintiff's theory for avoiding individual proof of reliance is, at this point in time, you cannot conduct that kind of litigation as a class action. And the same problem is here. Now, the plaintiff's argument begins from the notion that reliance is not required. I think as the Court has already recognized, the Forsyth case, amongst other ones, puts that argument to bed. Where you have a RICO claim that is based upon the payment of money and the fraud is based upon misrepresentations. You have to prove reliance on the misrepresentations. And there was some discussion this morning about whether this is an omissions case or a misrepresentations case as to the slot machines. The very best that can be said on behalf of the plaintiff is that this is a mixed case. And you don't have to look any further than the way the plaintiff set up their class certification claim in the district court. You look at the allegations. The misrepresentations supposedly are on the machines, the images of the machines, which you referred to, Judge, the presentation of the machines, which you referred to, Judge Wallace, and in the advertising. And in fact, they submitted several hundred pages of advertising with respect to these machines. This is how this fraud supposedly occurs. Then an oral argument we had to change. Well, ignore all of that. Now we want to claim an omissions case. And that gets us within... If this case... Is there any case that would apply affiliated UTE presumptions in the case of mixed allegations in the securities context? Not only isn't there a case, the Bender case in this circuit expressly rejects that. So if we were to characterize these as mixed or not primarily omissions, we wouldn't have the presumption in your view? Not under affiliated UTE. Now, again, the reply brief tries to find a different basis for presumption. Right, and that's what I want to ask you about. And I'll get to those. Well, I want to ask you about... I didn't really hear it as a presumption, as argued by Mr. Barrett, but rather circumstantial evidence. Yes. And that, in his view, the district court discounted that as an avenue of proof. Would you respond to that? Yes. Let me take circumstantial evidence first before we get to the different inference in the reply brief. The problem here is the plaintiffs only want you to look at one circumstance. And that is the fact that the players played the machines. The question, however, that has to be asked for each individual player is why did they play the machines? And furthermore, as I think is universally agreed, that causation question, if that's how you want to characterize it, is a but-for causation. Do I understand... that was the issue I was hoping you'd cover. Do I understand correctly what you're saying is, for example, in Las Vegas airport, there's a lot of machines. Some people would like to dump money in there instead of using their money to buy a book or buy a dinner. And you're saying you have to go to each individual's motive to the machine. They may not be playing it for profit, as distinguished from the stock market, which you always play for profit. Is that your argument? That's the guts of the argument, but I suggest that the distinctions are much broader. It's not only motivation. To get the kind of recovery that they want, it's also knowledge. Because what we have here is a situation, their claim is that these misrepresentations have misled the public into believing that these machines, these electronic gaming devices, have different odds than what they either know or expect or somehow have acquired from mechanical machines, where the assumption is that the odds are determined by the number of times the symbols appear on the reels. So, yes, you have motivation. Do odds matter in the vernacular? They obviously do to Bill Poulos. But to a 22-year-old tourist, as you say, who may be simply putting money in a slot machine for entertainment and nothing more, odds make no difference whatsoever. But I heard the argument a little bit differently, and that is, you know, people might have all kinds of reasons for putting themselves in front of a slot machine. But once there, at least as alleged, there's a material misrepresentation. You now, so assuming it is material, then there almost is presumed reliance, and therefore, if you play and you lose, you know, part of your loss is because of the misrepresentation. So I think they get you, as I understood it, to the slot machine. It doesn't matter why you show up there. And so would you take it from that point? In other words, it doesn't matter why you show up there, because you landed at Las Vegas Airport or because you love to gamble. All right, let's take the player in front of the slot machine. First of all, and this takes us back to Forsyth, you have to find somewhere a specific misrepresentation. It's not good enough under Forsyth to make general statements about benefits somebody might gain. And I would submit that it's not good enough to have images of spinning reels where the only way you turn those into fraud is if you make an assumption that those reels have some kind of connection with the payout. Now you're getting into an argument on the merits. We have to assume that these little pictures are material misrepresentations or omissions, just assuming for this argument and for the class action certification. You might be right in the end, but we have to, so don't go there on the merits yet. Second, the problem is with your assumption of materiality. You have to deal with this court's decision in the Grigsby case, which says if you have a one-on-one type transaction, which certainly a playing of a slot machine is, materiality is a subjective determination. It's one more individual issue. And while we're at that point, let me deal with Blackie v. Barrick, which is the exact opposite. Blackie v. Barrick is a fraud on the market case, perhaps the first fraud on the market case in the entire country. And the footnote to which counsel refers to, footnote 22, goes on to discuss the implications of that fraud on the market theory for being able to deal with rebuttable presumptions on a class-wide basis. And it ultimately comes to a conclusion that both this court has rejected and the Supreme Court has rejected. And it says, well, if in fact the rebuttable requirement of substantive law interferes with managing a class action, maybe we have to dispense with it. Well, maybe that statement could have been made when Blackie v. Barrick was decided, but it can't be made now. This court has said, the U.S. Supreme Court has said in AMCAM, you cannot shortcut the process. You cannot say to the plaintiff, well, we're not going to confront you with the requirements of proving individualized reliance. We're not going to allow the defendant no opportunity to rebut it if substantive law allows it. It's going to interfere with a class action. That can't be done. Let me ask you about the term reliance. We see it referenced in the Supreme Court case of Nieder in a criminal context, and of course they say reliance wouldn't be required. And then we see it used inconsistently in various circuit court decisions around the country. In your view, what is the relationship between the term reliance and the terms but for and proximate causation as used in the unaccount of phrase in RICO? Right. If that isn't too convoluted, but that's what we have to define. The by reason of phrase. Yes. Yeah, let me tackle that one head on because the problem, I think, comes to some extent from the fact that RICO has arisen, or RICO has generated, use of the term reliance, where at least in the securities context, and the Second Circuit has moved this change in terminology into RICO in the GELP funding case. What we are really talking about here is two aspects of causation. One of them is transaction causation. The second one is loss causation. Now, Binder in the securities context is a decision by this court that discusses this in some detail. Transaction causation is but for causation, and in the Binder panel's words, the equivalent of reliance. Was, in this case, the misrepresentation or the omission, the but for cause of putting the money in the machine. That's the transaction. Forsythe says, in the context of this case, you put the money in the machine, you have to show reliance on the misrepresentations. So we have the language moving from reliance, but for causation, transaction causation. I suggest it's the same concept. Okay. Now, second half, loss causation. Again, let's go to Forsythe. Forsythe says the second step in the process, which he referred to as the proximate causation, is, all right, once you put the money in the machine, once the transaction has occurred, were the misrepresentations the direct cause, did the misrepresentations directly produce a direct concrete financial loss? Okay. That's what in the securities case context is called loss causation. Again, discussed in Binder in that context, if you go to the Second Circuit's decision in the GELT funding case, they discuss the same language, use the same language in RICO. But again, the concept is where you started from, Justice McKeown. Proximate causation and but-for causation. One of them talks about the transaction. One of them talks about the concrete financial loss. Now, let me take, before my time expires, the third or the latest version of the inference. I think circumstantial evidence, I think the rebuttal to that is fairly obvious. The circumstances relevant to each person's playing of the machine is exactly that. You can't simply say, play the machine and stop the litigation process in midstream and say that's the only circumstance we're going to consider. Because you still have 22 million people out there who may be able to demonstrate by circumstantial and or direct evidence that they played the machine for some other reason. The latest version of the inference argument comes from the California's Supreme Court's decision in Vasquez. If you have an identical misrepresentation made to a group of consumers, we can infer reliance. And there are some district court cases that have said that is enough for a class action. The problem with that is that only reads one half of the Vasquez decision. Because after that inference, Vasquez goes on to say two critical things. One, the inference is rebuttable. But more importantly, it then says, if you go to page 977 of 44 Pacific Second, it says now it is up to the district court to determine whether or not with the inference The questions that must be litigated separately are not numerous and substantial. Because if there are, there is no class action. The point of this is Vasquez only sets up the question of whether a class action is proper. It doesn't answer it. The inference doesn't answer it. And again, why? So you're saying that even if the district court here had determined that there was reliance satisfied, in other words, or could be presumed, that that still wouldn't preclude him from weighing the circumstances and denying the class action. He wouldn't be weighing those circumstances. But let me go to the statement that he referred to in his manageability discussion, where he said, because of the requirements of proving both reliance and damages, this case would result in millions of mini-trials. Now the problem with the plaintiff is they say, well, if we can defeat predominance, we now have no problem with manageability. Not true. Once you recognize that all of this, whether it's inference, presumption, or circumstantial evidence, is rebuttable, even if you characterize the predominance requirement of being satisfied, those individual issues don't go away. You still have to litigate. You still have your millions of mini-trials. And that's why Vasquez, in the portion of its opinion that all of the courts that grant class certification based on Vasquez totally ignore, says, now, trial court, you have to decide whether this case can be litigated as a class action with the inference. I suggest that on the record before this court, this district court, below, considering all of the circumstances, did not abuse its exceptionally broad discretion. Thank you. Thank you. We'll hear from you, Mr. Barrett, on rebuttal. Thank you, Your Honor. I don't know where the word exceptionally comes from in terms of describing the district court's discretion. I said that in their brief. It's not in the law. First of all, on the question of the fundamental misrepresentation here, we have not changed our position. The complaint in this case is the complaint in this case. It says, among other things, that the misrepresentation is that there is a real chance of winning, and there is the same chance of winning on every play of these machines. If that statement is, as we allege, false, and if it is material, an issue that I submit has to be decided on a class-wide basis, what kind of a trial? What kind of a trial are defendants talking about? I get up on the stand, and I say, if I had known that the machine works the way I now know it works, I wouldn't have played. What are they going to do? Are they going to cross-examine me? But isn't it possible, even if reliance on an alleged omission is presumed, isn't it possible that each gambler had his or her own reasons for playing the video poker or electronic slots? For instance, like he said, for purely entertainment. That's one of the most cynical things I think I've ever heard. I mean, these people gamble because they want to make money. I mean, that's common sense. That's the basic transaction. At the very least, Your Honor, at the very least, that is a triable issue of materiality that a jury is entitled to hear. And to go back to my point, on an individual basis, what are they going to do? Are they going to cross-examine people and say, well, didn't you know this? Didn't you know this? Didn't you know this? Didn't you get this ad? And at the end of the day, for every single one of these individual millions of trials that they're talking about, which of course we understand could never occur, it is going to be exactly the same determination that the jury is going to make if you do it under a common sense application of materiality. You look at the facts, you look at what the machine looks like, what it presents to the person, and you ask yourself, is this important in the decision of a normal person based on all of the circumstances? I have a problem with that. If, in fact, you say you go to many trials, you'd have to just have these evidences going to the jury. So that's why we put them into a class action. Right. So you'd have in the class action the same people coming in and doing all the work. What I'm saying, Your Honor, is that in reality, if you think about what the evidence is that would be presented in each of those many trials, it's the same evidence in practical effect for every person. Obviously, if you have a William Poulos who says he's a professional gambler, you may have a few more questions. But what Blackie tells us, and I don't think this has changed notwithstanding counsel's comments, what Blackie tells us is you don't do that. Discovery in a class action is not a fishing expedition. You don't get to go out and ask the plaintiff, Well, when you saw that slot machine in the airport, you really wanted to be entertained, didn't you? And, of course, any witness in the world is going to be smart enough to answer that question, no. And the jury isn't going to know any more than it's going to know if those kinds of issues are presented in a serious class-wide basis, perhaps with experts, perhaps with marketing people, with psychologists, whatever. I mean, that all goes to the merits, and we shouldn't be talking about it. But the point is that I think this sort of mini-trial manageability issue is really a chimera. It doesn't exist because it's the same proceeding if you do it on an individual basis or if you do it on a class basis in terms of the real evidence that will be before a jury, making a decision whether this person, whether loss causation exists, whatever you want to call it, causation, reliance, and so on. The facts are going to be the facts. It's going to be a jury applying common sense to a transaction that by its very nature proposes, I'll give you a fair and honest roll of the dice spin of the reels. But you and your class action don't anticipate 22 million people coming up to the stand. No, no, no. Of course we don't, Ron. You have to get to the circumstantial evidence or presumption issue in order to get across manageability. And all I'm saying, Judge Paulus, and I hope I didn't confuse the court, all that I am saying is if you try to imagine what the trial on those issues is going to be like, the trial in the class action is not going to be any different in reality. Obviously the scope will be larger. But the trial is not going to be any different than one person coming into court, William Poulos coming to court and saying I was defrauded by these machines, which he's got an absolute right to do. They have the right to cross-examine him, and the jury will make its decision about whether he relied or not. But why not make your class 100 instead of 22 million? Well, we suggested at oral argument in the district court there are narrower classes and subclasses that could be defined here. There is a card class where the defendants have on their computers the names and addresses of all these people, the amounts that were wagered. There are a lot of practical ways to handle this. Yes, Your Honor. I mean, a smaller class could certainly be certified. This has always been an omissions case. That's simply wrong. If you look, for example, at paragraph 160 of the complaint, and numerous other paragraphs in the complaint allege omissions here. So if that is a relevant consideration, this has always been an omissions case. Thank you. Thank you very much. The case of Poulos v. Caesars is submitted.
judges: Wallace, McKeown, Callahan